**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY
COMPANY,

        Plaintiffs,

        vs.                             No.  1:20-CV-00436-WJ-JHR

NEWMAR CORPORATION; DAIMLER TRUCKS
NORTH AMERICA LLC, and JOHN DOE

        Defendants.

**MEMORANDUM OPINION AND ORDER RULING ON DEFENDANT DAIMLER
TRUCKS NORTH AMERICA LLC'S MOTIONS TO EXCLUDE EXPERT
TESTIMONY and MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the following motions filed by Defendant

Daimler Trucks North America, LLC ("DTNA"):

- Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Lucas Edwards,
  filed April 6, 2021 (**Doc. 44**). The Court find that this motion is well-taken to the
  extent it requests that the Court find that the report produced by EFI Global contains
  only Mr. Edwards' opinions. The remainder of this motion is not-well taken.
  Accordingly, this motion is GRANTED IN PART and DENIED IN PART.

- Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Ryan Scalf, filed
  April 6, 2021 (**Doc. 45**). The Court finds that this motion is not well-taken and is
  therefore DENIED.

- Motion for Summary Judgment, filed April 6, 2021 (**Doc. 46**). The Court finds that
  this motion is not well-taken and is therefore DENIED.

**Background**

THIS IS a subrogation action arising out of an August 21, 2020 incident involving Plaintiffs

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company's

("Plaintiffs" or "State Farm") insureds, Truman and Lynn Esmond (collectively the "Esmonds" or

"Insureds"). *See* Doc. 46-1, Statement of Undisputed Material Facts ("SUMF").[1]  The Esmonds were traveling on Interstate 40 between Albuquerque and Gallup, New Mexico in their 2018 Newmar Ventana LE Model 3717 RV (VIN 4UZACHFC8KCKP8377) (the "RV"). SUMF ¶¶ 2, 5. The RV was designed and manufactured by Defendant Newmar Corporation. *Id.* ¶ 3. The RV's chassis, a component part of the RV that includes the brake system, was manufactured by DTNA. *Id.* ¶ 4.

At the time of the incident, Lynn Esmond was driving the RV, which was towing the Esmonds' 2013 Honda CR-V. *Id.* ¶ 6. The Esmonds heard a "pop" from the rear of the RV and Ms. Esmond pulled over to the side of the road and turned off the engine. *Id.* ¶¶ 6, 7. Truman Esmond exited the RV from the passenger side and saw flames coming from the back of the RV on the driver's side. *Id.* ¶ 7. The fire department arrived on the scene and extinguished the fire but the RV and much of its contents, as well as the 2013 Honda CR-V, sustained fire damage. *Id.* ¶ 8. On the day of the incident, the Esmonds did not observe any warning indicators or experience any electrical or mechanical problems or concerns with the braking system. *Id.* ¶ 9. After extensive testing of the RV and some of its component parts, the cause of the fire is still undetermined. *Id.* ¶ 10.

State Farm paid insurance benefits to the Esmonds as a result of the losses and damages caused by the fire. *Id.* ¶ 11. Now Plaintiffs claim they are subrogated to the rights of the Insureds to the extent of their payment of insurance benefits to the Esmonds. *Id.* ¶ 14. As it pertains to the claims asserted against DTNA, Plaintiffs contend the fire was caused by the RV's chassis and

---

[1]     The Court bases its factual discussion of the case on the Motion for Summary Judgment's SUMF. Doc. 46-1 at 2–4. As further discussed below, Plaintiffs' Response brief does not follow the format imposed by Local Rule 56.1(b), nor does it attempt to controvert any of DTNA's material facts. Accordingly, the Court considers all facts contained in DTNA's SUMF to be admitted. *See* D.N.M.LR-CIV 56(b); *see also* Fed. R. Civ. P. 56(e). This section does not contain citations to the exhibits supporting DTNA's SUMF.

embedded brake system, which Plaintiffs allege were defective and unreasonably dangerous. *Id.* ¶ 12. Plaintiffs assert against DTNA claims of strict products liability, negligence, and breach of implied warranties. *Id.* ¶ 13.

## Discussion

### I.    The Court Strikes the Affidavits of Clay Bailey (Doc. 51) and Timothy C. Behrens (Doc. 54)

As a preliminary matter, the Court will first determine whether in ruling on DTNA's motions it may consider the affidavits of Clay Bailey, Lucas Edwards, Ryan Scalf, and Timothy Behrens. Docs. 51, 52, 53, 54. Plaintiffs filed these four affidavits in conjunction with their April 28, 2021 response briefs. DTNA asserts that the affidavits, filed approximately five months after the deadline for expert disclosures, must be disregarded because they contain new opinions not contained in State Farm's expert disclosures and reports. The Court agrees with DTNA to the extent it argues the Bailey and Behrens affidavits are untimely and improper.

On September 9, 2020, the Court issued an Order setting case management deadlines and discovery parameters (the "Scheduling Order"). Doc. 23. The Scheduling Order imposed a December 9, 2020 deadline for Plaintiffs' Rule 26(a)(2) expert disclosure, which included disclosure of "the names of all expert witnesses. . . the subject matter on with the experts will present evidence, and a summary of the facts and opinions to which the experts are expected to testify. . ." and the corresponding "expert report." *Id.* at 2 n.2. (citing Fed. R. Civ. P. 26(a)(2)). The Scheduling Order also imposed an April 30, 2021 discovery deadline. *Id.* at 2.

Meeting the expert disclosure deadline, Plaintiffs filed a notice identifying the following experts: (a) Timothy Behrens, Lucas Edwards, Clay Bailey, Brian Beasley, all employed by EFI Global (collectively the "EFI Global team")  and (b) Ryan Scalf of Metals Engineering and Testing Laboratories. Doc. 28. Plaintiffs contemporaneously disclosed two expert reports, an engineering

report produced by EFI Global on December 4, 2020 (the "Engineering Report") (Doc. 46-2)[2] and

a metallurgical report produced by Metals Engineering and Testing Laboratories on March 3, 2020

(the "Metallurgical Report") (Doc. 46-5).[3]

Plaintiffs' notice of expert disclosure includes the perfunctory statement:

[t]he experts will testify as to the examination of the Newmar coach and component
parts within it that caused the coach to catch fire. . . . The findings show that the
left brake drum shows evidence of excessive overheating consistent with frictional
overheating from the brake shoes dragging against the drum over an extended
period of time. The right brake drum did not exhibit this type of evidence. Their
findings are that a brake system issue caused the fire as opposed to tire failure or
other similar issue.

Doc. 28. However, as the Court will discuss further, the contents of the two timely disclosed expert

reports do not align perfectly with this notice, nor do these reports contain the opinions of Clay

Bailey or Timothy Behrens. When viewed under the totality of the circumstances, the opinions

expounded by Mr. Bailey and Mr. Behrens in their untimely affidavits go beyond the bounds of

the disclosed expert reports.

Plaintiffs contend that DTNA is bringing a *Daubert* challenge against State Farm's team

of experts. Consequently, State Farm devotes much of its Response brief to an in-depth and largely

irrelevant discussion of the team members' qualifications and their application of a reliable,

accepted methodology to the investigation. DTNA does not dispute qualifications or methodology

used, and instead challenges these affidavits on procedural grounds, specifically Federal Rules of

Civil Procedure 26 and 37.

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert witnesses. *AIG Aviation Ins. v.*

---

[2]    This citation refers to DTNA's Motion for Summary Judgment. The Engineering Report also appear on the
docket as Doc. 44-2.

[3]    This citation refers to DTNA's Motion for Summary Judgment. The Metallurgical Report also appear on the
docket as Doc. 45-2.

*Avco Corp.*, No. 09-CV-352 BB/LFG, 2011 WL 13174496, at *1 (D.N.M. Mar. 14, 2011). Under the rule, disclosure of testifying experts must be accompanied by a written report—prepared and signed by the witness, which "must contain . . . *a complete statement of all opinions* a witness will express *and the basis and reasons for them*. . .'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(B)) (emphasis added). These written reports are intended "to set forth the substance of the direct examination." *AIG Aviation Ins.*, 2011 WL 13174496, at *1. An expert report must not be sketchy, vague or preliminary; it must be detailed and complete, including how and why the expert reached a particular result, not merely the expert's conclusory opinions. Fed. R. Civ. P. 26(a)(2)(B) Adv. Comm. Note (1993); *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840-KHV, 2011 WL 5506259, at *1 (D. Kan. Nov. 10, 2011). In addition to a party's initial duty to fully disclose "all opinions" that an expert will offer at trial, a party is also "under a duty to supplement at appropriate intervals any disclosures made if it learns that in some material respect the information previously disclosed was incomplete or incorrect, and if the additional or corrected information has not otherwise been disclosed to the parties during the discovery process." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). However, the purpose of supplementation is to correct inadvertent errors, not to allow a party to engage in "gamesmanship" by creating a "new and improved" expert report in order to gain tactical advantage or by bolstering opinions to avert a dispositive motion or an expert challenge. *Rodgers v. Beechcraft Corp.*, No. 15-CV-129-CVE/PJC, 2016 WL 7888048, at *2 (N.D. Ok. Sept. 20, 2016) (citing *Beller*, 221 F.R.D. at 701). The duty to supplement does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness's report, and does not allow a party to file supplements intended to "deepen" or "strengthen" its own expert's prior Rule 26(a)(2)(B) report. *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 528 (D.N.M. 2007)

(internal citations and quotations omitted); *see also Vigil v. Burlington N. & Santa Fe Rwy. Co.*, 521 F.Supp.2d 1185, 1207 (D.N.M. 2007).

Rule 37(c)(1) provides an incentive for full disclosure, namely, that a party "will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." *AIG Aviation Ins.*, 2011 WL 13174496, at *2 (quoting Fed. R. Civ. P. 26(a)(2)(B) Adv. Comm. Note (1993)); *see also Rodgers*, 2016 WL 7888048, at *3 ("The expert disclosure requirements of Rule 26 are clear and a litigant who fails to comply with these requirements does so at his own peril.") (internal quotations omitted). The Tenth Circuit has identified four factors a court should consider when deciding whether the failure to disclose an opinion is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Garcia v. Bd. Of Albuquerque Public Sch.*, No. 05-CV-0062-WPJ/WPL, 2006 WL 8444063, at *3 (D.N.M. May 10, 2006) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). The party who violates the requirements in Rule 26 has the burden to establish that these factors weigh in favor of allowing a new expert opinion. *See The Quapaw Tribe of Okl. v. Blue Tee Corp.*, No. 03-CV-0846-CVE/PJC, 2010 WL 3909204, at *3 (N.D. Okl. Sept. 29, 2010) (requiring party that violated Rule 26 to show that its "untimely disclosure of new expert testimony is harmless or substantially justified") (internal citations omitted).

The Court has compared all four affidavits (Docs. 51, 52, 53, 54) against the contents of State Farm's two timely disclosed expert reports (Docs. 46-2 & 46-5) and concludes that the Bailey and Behrens affidavits (Docs. 51 & 54) contain substantively new opinions. Both experts opine that the evidence of excessive overheating in the left rear brake drum, which did not appear in the

right rear brake drum, demonstrates that the fire originated in the left brake drum area and tends to exclude as causes tire failure and driver error. *See* Docs. 51 ¶¶ 7–15; 54 ¶¶ 7–12, 15. Mr. Behrens further expounds that the evidence is consistent with a theory that some portion of the air braking system failed, resulting in a loss of air pressure that caused the brake shoes to drag against the brake drum for an extended period of time and not release, leading to the overheating that possibly ignited the fire and ruptured the left rear tire. Doc. 54 ¶¶ 13–14.  Upon review, it is clear that the Bailey and Behrens affidavits posit new theories not found in the timely disclosed Engineering Report. This conclusion is not based on a determination as to whether the Engineering Report contains the opinions of Mr. Bailey or Mr. Behrens, which the Court will address in its ruling on DTNA's Motion to Exclude the Expert Testimony and Opinions of Lucas Edwards.

DTNA argues that Mr. Bailey's and Mr. Behrens' prior undisclosed opinions should be stricken pursuant to Fed. R. Civ. P. 37 because the attendant factors show that State Farm's failure to disclose was not substantially justified or harmless. The Court finds that, despite Clay Bailey and Timothy Behrens being listed on the notice of expert disclosure, State Farm created a surprise by waiting to disclose the substance of their opinions until nearly five months after the December 9, 2020 expert disclosure deadline. Moreover, these affidavits prejudice DTNA, as they were placed on a docket a mere two days before the April 30, 2021 discovery deadline, *see* Doc. 28, and after DTNA filed its motion for summary judgment. It would be difficult to cure this prejudice, as addressing these late disclosures at this point would involve increased costs to DTNA and reopening expired deadlines, which the Court does not view a viable option. The Court declines to make a finding that these new opinions would be disruptive to trial or that these new opinions were submitted in bad faith. However, the Court considers State Farm's decision to not request an extension on the discovery deadline highly relevant. When considered as a whole, the

circumstances under which the Bailey and Behrens affidavits were produced weigh in favor of striking them under Fed. R. Civ. P. 37.[4]

## II.      The Motions to Exclude Expert Testimony and Opinions

The outcome of this case is dependent on what the jury takes away from the parties' "battle of the experts." Pursuant to Fed. R. Evid. 702(a), DTNA challenges Plaintiffs' experts Lucas Edwards and Ryan Scalf, contending that their reports, testimony, and opinions are irrelevant and will not help the jury determine a fact in issue. Docs. 44 & 45. Additionally, DTNA argues that the opinions contained in the Engineering Report should be attributed to only Lucas Edwards. Finally, DTNA submits that the expert disclosures did not conform to the requirements of Fed. R. Civ. P. 26(a)(2)(B) and requests an order for State Farm to cure the alleged deficiencies.[5]

### a.   Legal Standard

Fed. R. Evid. 702 governs the admissibility of expert testimony. The Rule's first requirement mandates that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if[]. . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702(a).[6] The proponent of the expert bears the burden to establish by a preponderance of the evidence that the requirements for admissibility have been met. *Array Tech., Inc. v. Mitchell*,

---

[4]      In contrast, a review of the affidavts of Lucas Edwards and Ryan Scalf does not reveal any new findings or opinions. Mr. Edwards and Mr. Scalf merely affirm the contents of their timely disclosed expert reports.

[5]      Plaintiffs' counsel represents in the Response briefs that it inadvertently failed to provide certain required information in its initial disclosure and that these deficiencies have been remedied.

[6]      DTNA's challenge is based on the first of Rule 702's four requirements. In its entirety, Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

No. 17-CV-087-CH/LF, 2020 WL 1514621, at *2 (internal citations omitted). Although Plaintiffs style the motions to exclude as a *Daubert* challenge, DTNA does not dispute the Mr. Edwards' and Mr. Scalf's qualifications nor does it dispute that they applied reliable principles and methods during their respective investigations. *See* Docs. 56 at 4 & 57 at 3. Thus, the only determination for the Court at this point is whether the expert testimony and opinions will assist the trier of fact to understand the evidence or determine a fact at issue, which the Tenth Circuit construes as "a question of relevance." *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997); *see also Array Tech., Inc.*, 2020 WL 1514621, at *1 ("Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable."). Under the Federal Rules of Evidence, evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.

**b.  The Engineering Report does not contain the opinions of the entire EFI Global team**

As a threshold matter, the Court agrees with DTNA that it would be inappropriate for Clay Bailey, Timothy Behrens, or Brian Beasley to give expert testimony and opinions in this case. Witnesses who are retained or specifically employed to provide expert testimony, such as members of the EFI Global team, must provide a written report prepared and signed by the expert witness,

---

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

containing a complete statement of all opinions the witness will express and the basis and reasons for these opinions. Fed. R. Civ. P. 26(a)(2)(B). Lucas Edwards is the only author acknowledged on the cover sheet of the Engineering Report, which bears Mr. Edwards' signature and professional seal. *See* Doc. 44-2 at 2. Although portions of the report mention other members of the EFI Global team, these references are limited to Mr. Edwards describing his colleagues' observations, which Mr. Edwards in turn incorporates into his own discussion, analysis, and conclusions. Moreover, the "Limitations" section of the report states clearly "*[t]he opinions contained within this report are limited to the circumstances associated with this loss, and are based on this author's education, experience, and training*." Doc. 44-2 at 5 (emphasis added). Under these circumstances, the Court construes the Engineering Report to contain only the opinions of Lucas Edwards. Plaintiffs failed to make a timely disclosure of opinions from Mr. Bailey, Mr. Behrens, or Mr. Beasley, and therefore Plaintiffs may not use their opinions in this case. *See* Fed. R. Civ. P. 37(c). Additionally, even if the Court were to find that the Engineering Report contained the opinions of all members of the EFI Global team, the opinions of the other members would be cumulative of Mr. Edwards' opinions. *See* Fed. R. Evid. 403 (allowing a court to exclude relevant, but needlessly cumulative, evidence).

### c. Expert witnesses Lucas Edwards and Ryan Scalf offer relevant testimony that will help the trier of fact to understand the evidence or to determine a fact in issue

The two motions to exclude assert that the expert testimony of Lucas Edwards and Ryan Scalf, which includes the contents of the Engineering and Metallurgical Reports, must be stricken as irrelevant and unhelpful because such testimony would be devoid of opinions as to the central disputed issues in this case—defect and causation. State Farm counters by asserting that both reports contain relevant circumstantial evidence that would allow jurors to draw reasonable inferences in this case. *See Weir v. Federal Insurance Company et.al*, 811 F.2d 1387, 1392 (10th

Cir. 1987). The New Mexico substantive law governing this diversity action permits the use of circumstantial evidence to prove facts. *See Heer v. Costco Wholesale Corp.*, No. 12-CV-1059-RB/KBM, 2014 WL 11674248, at *3 (D.N.M. Jan. 14, 2014), *aff'd*, 589 F. App'x 854 (10th Cir. 2014). Having reviewed the reports and the Edwards and Scalf affidavits, the Court finds that Mr. Edwards' and Mr. Scalf's findings and opinions touch on the probability of defect and causation, essential elements in State Farm's claims. Under the lenient standard of Rule 702, the Court finds that the expert testimony and opinions of Lucas Edwards and Ryan Scalf, as delineated in their respective report and affidavit, are admissible.

### III.    The Motion for Summary Judgment

State Farm's claims against DTNA are premised on State Farm's contention that an unspecified defect in the RV's chassis or brake system caused the fire at issue in this case. *See* Doc. 18 (Amended Complaint) ¶¶ 23–24; 26–27; 31–32. The Motion for Summary Judgment claims that State Farm has failed to produce any evidence to support these claims because no defect has been identified and, as the expert reports reveal, the cause of the fire is still undetermined. Whether under strict products liability, warranty, or negligence theories, State Farm must prove that a DTNA-manufactured component was defective or unreasonably dangerous. *See Bellman v. NXP Semiconductors USA, Inc.*, 248 F. Supp. 3d 1081, 1123–27 (D.N.M. 2017). State Farm must also prove that the alleged defect caused the fire. *Id.* In support, DTNA presents the Court with a Statement of Material Facts, none of which are disputed by Plaintiffs, which tends to demonstrate that the evidence in this case does not sufficiently prove defect or causation.

State Farm's Response brief[7] submits that the Motion for Summary Judgment is essentially

---

[7]    The Court considered striking Plaintiffs' Response brief due to its failure to conform to the formatting instructions contained in D.N.M.LR-Civ. 56.1(b). However, in the interest of an efficient resolution of the Motion for Summary Judgment, the Court will not strike this filing.

a *Daubert* challenge in disguise. Rather than attempting to controvert DTNA's statement of material facts, Plaintiffs set forth additional facts they contend are material and would allow jurors to draw reasonable inferences for imposing liability on DTNA. The Court declines the invitation to construe DTNA's motion as a *Daubert* challenge. Instead, the Court will limit its inquiry to whether Plaintiffs' evidence is sufficient to preclude summary judgment and send its claims to a jury.

### a. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (a genuine issue of fact is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party").

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To carry this burden, the movant may simply point out the absence of evidence to support an essential element as to which the nonmovant will bear the burden of proof at trial. *Herrera,* 506 F.3d 1303 at 1309 (citing *Celotex Corp.*, 477 U.S. at 325). If the moving party meets its burden, "the burden then shifts to the nonmovant to set forth specific facts

from which a rational trier of fact could find for the nonmovant." *Herrera*, 506 F.3d at 1309 (citation and internal quotation marks omitted); *see also Celotex Corp.*, 477 U.S. at 324 (the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record. . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court views the record in the light most favorable to State Farm as the non-moving party and draws all reasonable inferences in its favor. *See Smothers*, 740 F.3d at 538 (internal quotation omitted). At this stage, the Court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 243. Additionally, the Court "bear[s] in mind the actual quantum and quality of proof necessary to support liability. . . ." *Id.* at 254. Finally, the Court emphasizes that it is the role of the jury to assess witness credibility in deciding how to view testimonial evidence. *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1159 (10th Cir. 1992) (citing *White v. Conoco, Inc*., 710 F.2d 1442, 1443 (10th Cir.1983)).

**b.  Summary Judgment is not appropriate**

DTNA argues it is entitled to summary judgment because State Farm has not established evidence of defect and causation, essential elements in all claims brought against DTNA, or negligence. The Amended Complaint alleges that a defective condition in the brake system caused the brake shoes to drag against the left rear brake drum, in turn leading to excessive overheating due to friction and, ultimately, the fire. *See* Doc. 18 ¶¶ 5.e. But these conclusory allegations, without proof, will not allow State Farm to survive summary judgment. The true inquiry is whether

the Response brief's additional material facts, many of which take the form of expert findings and opinions, establish circumstantial evidence that would allow a rational juror to return a verdict in favor of Plaintiffs.

Under New Mexico Law, circumstantial evidence may be used to prove facts. *Heer,* 2014 WL 11674248, at *3 (internal citations omitted). The state's Uniform Civil Jury Instructions provide:

> [a] fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved.

UJI 13-308 NMRA (2020). New Mexico courts have held that "circumstantial evidence must support a conclusion based rationally and logically on the 'facts established by evidence when viewed in light of common experience.'" *Heer*, 2014 WL 11674248, at *3 (quoting *Andrus v. Gas Co. of New Mexico, a Div. of Pub. Serv. Co. of New Mexico*, 1990-NMCA-049, ¶ 14, 798 P.2d 194, 197). In this case, the circumstantial evidence and proof of facts must support a reasonable inference that a defect in the brake system caused the fire. State Farm claims the following give rise to this inference:

i.     *Evidence that the fire originated at the left rear brake drum*

The physical evidence shows that the left brake drum experienced excessive overheating, and the right brake drum did not. Metallurgic Report at 1; Scalf Aff. ¶¶ 3–4. Expert Ryan Scalf concluded that the fire "originated in a left side brake drum and travelled to the right side of the vehicle." Metallurgic Report at 1. This conclusion is consistent with the Esmonds' testimony. *See* T. Esmond Dep. 28:12-24; 31:6-14; L. Esmond Dep. 29:15-17; 36.

ii.     *Evidence that the fire was not caused by an electrical issue*

Expert Lucas Edwards made the sufficient findings, memorialized in the Engineering Report, showing that there were no indications of gross electrical failure, no signs that the fire originated from the battery box, and that there was no indication any of the electrical system came in contact with the area in which the fire originated. *See* Engineering Report. Consequently, Mr. Edwards properly offers his expert opinion that the fire was not due to an electrical issue. *Id.* at 5.

iii.     *Evidence that the fire was not caused by driver error or road conditions*

Ms. Esmond was driving the RV at the time of the incident. L. Esmond Dep. 27:5-13. The Esmonds had a practice of trading off drivers after a few hours of driving and they followed that practice on the date of the incident. L. Esmond Dep. 20:5-18; T. Esmond Dep. 58:2-3. Mr. Esmond was attentive to Ms. Esmond's driving and confirmed that she was not distracted on the date of the incident. T. Esmond Dep. 57:2-25; 58:16-25. Ms. Esmond was driving below the speed limit and using cruise control. L. Esmond Dep. 27:5-9. Ms. Esmond did not have the brake on while driving and did not have any issues with the brakes up to the time of the incident. *Id.* 23:17-25; 24:1-13; 27:1-3; 53:10-21. Truman Esmond testified that he and Lynn had no issues driving while on Interstate 40, and the road was flat and straight. T. Esmond Dep. 27:13-22; 28:6-11.

iv.     *Expert opinion that the evidence is consistent with the fire being caused by a mechanical defect*

Ryan Scalf properly opines that excessive overheating in the left brake drum greater than that observed in the right-side brake drum serves as evidence that a dragging brake on the left side caused the fire. Scalf Aff. ¶ 3; Metallurgical Report at 1.

Having considered these material facts, the Court will now determine whether they are sufficient to preclude entry of summary judgment. In order to preclude summary judgment, these facts would have to allow a reasonable juror to return a verdict for State Farm.

Plaintiffs broadly argue "[n]ew, high-end RVs being driven in a safe and reasonable

manner do not typically catch fire without cause." Doc. 48 at 9. They assert that it would be proper in this case for the jury to use the proffered circumstantial evidence to infer negligence, defect, and causation. Any inference of negligence would need to be preceded by a jury instruction on the doctrine of *res ipsa loquitur*. DTNA argues that allowing the jury to apply *res ipsa loquitur* and infer negligence would be impermissible because "the RV was in the exclusive control of the Esmonds at the time of the fire and was never in the control of DTNA, a components manufacturer. Doc. 46 at 5 n.1 (citing *Livingston v. Begay*, 1982-NMSC-121, 652 P.2d 734).[8] This argument fails to take into account the full scope of New Mexico's application of the doctrine.

*Res ipsa loquitur* is available in a New Mexico products claim brought under a negligence theory. *Meil v. Piper Aircraft Corp*., 658 F.2d 787, 791 (10th Cir. 1981) (citing *Tafoya v. Las Cruces Coca-Cola Bottling Co*., 1955-NMSC-001, ¶¶ 9–15, 278 P.2d 575, 578). In order to apply the doctrine, evidence must sufficiently establish that in the ordinary course of events an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality. *Trujeque v. Serv. Merch. Co*., 1994-NMSC-036, ¶ 6, 872 P.2d 361, 364 (internal citations omitted).  The meaning of "exclusive control" is fact specific within any given case. *Mireles v. Broderick*, 1994-NMSC-041, ¶ 18, 872 P.2d 863, 870. "The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id.* (quoting Restatement (Second) Torts § 328D cmt. g). The "Directions for Use" Note on the Civil Jury Instruction for Circumstantial Evidence

---

[8]       The citation to *Livingston* is apt but does not necessarily strengthen DTNA's position. The New Mexico Supreme Court never discussed whether Montgomery Ward, the manufacturer of the heater at issue, was negligent. Rather, the court reinstated the trial court's original grant of summary judgment to Montgomery Ward because the manufacturer had presented extensive, unrebutted testimony that established a prima facie case showing that the heater was not defective at the time of sale. *Livingston*, 1994-NMSC-041, ¶ 34–40. Here, DTNA does not present similar evidence (*e.g*., product testing or post-sale inspections). The *Livingston* court's discussion of *res ipsa loquitur*'s "exclusive control" requirement appears narrow, *see id*. at ¶ 14, and, moreover, the analysis could be superseded by more recent language in the *Trujeque* and *Mireles* decisions.

of Negligence ("Res Ipsa Loquitur") states, "[e]xclusive control by the defendant, of the instrumentality or circumstance at issue is not a prerequisite for [this instruction's] use" and "[a]s a factual matter, two or more persons may conceivably share responsibility of the management of the object, activity, or circumstances at issue." UJI 13-1623 NMRA (2020).

Here, in one of its three claims against DTNA, State Farm alleges that DTNA was negligent in "designing, making, [or] testing its products prior to sale." Doc. 18 ¶ 25. In answering the Amended Complaint, DTNA admits it is "a manufacturer of certain components of motor vehicles that are sold to and installed into completed motor vehicles, including recreational vehicles, by other manufacturers." Doc. 19 ¶ 3.a. Whether the jury may draw an inference of negligent design, manufacturing, or testing depends largely whether there is evidence that DTNA had the "ultimate responsibility" to ensure that the chassis and brake system were reasonably safe. *See Mireles*, 1994-NMSC-041, ¶ 18, 872 P.2d at 870. The Reply brief submits that DTNA's control and management of the chassis was nonexistent after July 12, 2018, when DTNA sold this component to the Newmar Corporation. Doc. 55 at 11 n.3. DTNA asserts:

> [t]he brakes for instance may have been adjusted and maintained by [Newmar Corporation], the Esmonds, and various repair facilities several times after the chassis left the control of DTNA – more than a year and many thousands of miles before the subject fire.

*Id.* at 10–11. DTNA fails to cite to any supporting materials for this contention, which weakens the argument considerably. *See* Fed. R. Evid. 56(c). Additionally, the undisputed facts on the record, when viewed in a light most favorable to State Farm, demonstrate an absence of intervening control, management, or interference that would relieve DTNA of its "ultimate responsibility" over the safety of the chassis and brake system. In other words, the facts of this case would allow, but not compel, a juror to infer negligence under the doctrine of *res ipsa loquitur*.

Now the Court addresses whether a reasonable juror would be capable of inferring defect

or causation in this case. Plaintiffs rely heavily on *Fain v. GTE Sylvania*, *Inc*., a case in which the Missouri Court of Appeals concluded that a jury could infer that a television set was defective, even without proof that some specific component of the set was defective. 652 S.W.2d 163, 165 (Mo. Ct. App. 1983). In reaching this conclusion, the *Fain* court remarked:

> Although the mere fact of an accident, standing alone, does not generally make out a case that a product is defective, common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible.

*Id.* (citing *Winters v. Sears, Roebuck & Co*., 554 S.W.2d 565, 569 (Mo.App.1977)). Plaintiffs rely heavily on this citation, arguing "common sense tells us this RV should not have caught fire." Doc. 48 at 2. Plaintiffs also cite *Weir v. Federal Insurance Company et.al*, an opinion in which the Tenth Circuit applied Colorado law and ultimately concluded "[t]he inference of a defect is permissible whenever the plaintiff has introduced evidence that would exclude other causes of the accident." 811 F.2d 1387, 1392 (10th Cir. 1987).

New Mexico applies a circumstantial evidence rule similar to those cases cited by Plaintiffs, with the New Mexico Supreme Court holding:

> The requirement upon plaintiffs under the circumstantial evidence rule in this civil case. . . is that the facts and circumstances. . . together with the inferences that may be legitimately drawn therefrom, shall indicate with reasonable certainty. . . that the product was defective and the defective product caused plaintiffs' damages. [] It is a matter of probabilities in light of all the evidence.

*Carter Farms Co. v. Hoffman-Laroche, Inc*., 1971-NMCA-178, ¶ 13, 492 P.2d 1000, 1002 (internal citations and quotations omitted). Thus, under New Mexico law, the Court engages in a relatively straight-forward inquiry to decide whether the evidence presented is capable of reasonably convincing a rational juror that State Farm's conclusion that defective brakes caused the fire is more probable than any other alternative. *See Andrus*, 1990-NMCA-049 at ¶ 14, 798 P.2d at 197.

The findings of the Engineering and Metallurgical Reports and expert opinions of Lucas Edwards and Ryan Scalf, combined with the eyewitness testimony of Lynn and Truman Esmond, are sufficient to support State Farm's preferred conclusion in the mind of a rational juror. In other words, the evidence creates an inference capable of supporting a judgment in Plaintiffs' favor. *See Springer Corp. v. Dallas & Mavis Forwarding Co., Inc.*, 1976-NMCA-130, ¶11, 559 P.2d 846, 848, *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977) (internal citations omitted) ("An inference which will support a judgment cannot be supposition or conjecture, but must be a logical deduction from facts proven."). State Farm's evidence presents a logical deduction from facts proven that defective brakes caused the fire, and therefore DTNA's liability must be determined by a jury. Accordingly, the Court concludes that DTNA is not entitled to summary judgment.

### Conclusion

**THEREFORE,** for the reasons discussed in this Memorandum Opinion and Order, the Court hereby **GRANTS IN PART** and **DENIES IN PART** DTNA's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Lucas Edwards **(Doc. 44)**.

**FURTHERMORE**, the Court hereby **DENIES** DTNA's Motion to Exclude Testimony and Opinions of Plaintiffs' Expert Ryan Scalf **(Doc. 45).**

**FURTHERMORE**, the Court hereby **DENIES** DTNA's Motion for Summary Judgment **(Doc. 46).**

**FINALLY**, the Court hereby **STRIKES** the Affidavit of Clay Bailey **(Doc. 51)** and the Affidavit of Timothy Behrens **(Doc. 54)** from the record.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE